## O. H. GRISSOM V. TAYLOR ANDERSON ET AL.

No. 6277. Decided March 6, 1935.
Rehearing overruled April 3, 1935.
(79 S. W., 2d Series, 619.)

C. F. Richards, of Lockhart, and Hart, Patterson & Hart, of Austin, for plaintiff in error.

By their several deeds the wives of Frank and Taylor Anderson, joined by their husbands, with full knowledge of the existence of the Welch mineral lease, and of its terms, sold interests in the land, and expressly made these conveyances subject to the Welch lease. By the same instruments they also sold royalties and rentals created by the Welch lease and existed only in event Welch lease was valid and operative. Such acts constituted recognition of the existence of the lease and ratification of it. Ascarete v. Pfaff, 78 S. W., 974; Humble Co. v. Davis, 282 S. W., 930; Van Deventer v. Gulf Production Co., 41 S. W. (2d) 1029; Havard v. Smith, 13 S. W. (2d) 742; Corzine v. Williams, 85 Texas, 499.

Slay & Simon, of Fort Worth, and W. M. Jones, of Longview, for defendants in error.

Ben H. Powell and Ocie Speer, both of Austin, filed arguments as amici curiae.

MR. JUSTICE SHARP delivered the opinion of the court.

Taylor Anderson and wife, Frank Anderson and wife, B. H. Thacker, J. H. Timmons, and C. P. Haynes filed this suit against O. T. Welch, O. H. Grissom, and Fred J. Adams, in the form of a trespass to try title to an undivided one-fourth interest in 62½ acres of land of the John Ruddle Survey in Gregg

County, Texas. The defendants Welch and Grissom answered by plea of not guilty and specially pleaded a lease executed to O. T. Welch by the Andersons, and asked, in the alternative, that if the lease be held ineffective, for recovery of damages from the Andersons. The defendant Fred J. Adams answered by plea of not guilty, and set up a lease by the Andersons to Welch, and the assignment of it to O. H. Grissom, and by O. H. Grissom to the defendant Adams, of a specific portion of the south one-half of the land,—and further set up estoppel by reason of recitals and declarations made in the leases, and also set up warranty of title given by O. H. Grissom. In answer to the pleadings filed by defendants, plaintiffs filed supplemental pleadings, contending that the Welch lease was void. The case was tried before the court without a jury, and the trial court held that the Welch lease was void as to the plaintiffs, and entered judgment for the plaintiffs as against all the defendants, and in favor of the defendant Fred J. Adams on his prayer that his interest be set apart to him in the south one-half of the tract of land. O. H. Grissom appealed to the Court of Civil Appeals at Texarkana, and that court affirmed the judgment of the trial court. 48 S. W. (2d) 809.

Plaintiff in error contends that the Court of Civil Appeals erred in overruling the following assignment of error:

"It, being established by the undisputed evidence in this case that after the mineral lease had been given to O. T. Welch by all the joint owners of the Jennie Anderson land, the wives of the two owners who had a homestead interest in said land, with full knowledge of the execution, delivery and existence of the Welch lease, sold interests and property rights accruing to them under and because of said Welch lease, and by their deeds claimed to be the owners of such property rights, and that in making such sales said vendors expressly made same subject to the terms of the Welch lease, and that said conveyances were duly executed by the husbands and their wives, the court erred in not holding that such conveyances of royalty interests constitute ratification of the Welch lease and create it a valid lease upon said premises."

On the other hand, defendants in error contend that the mineral lease executed by Frank and Taylor Anderson to Welch was void, because it was not signed and executed by their wives, as required by Articles 1300, 6605, and 6608 of the Revised Statutes. Furthermore, that the lease was void and could not be ratified by the wives by any act short of a full

compliance with the statute prescribing the manner in which a homestead may be conveyed.

For a partial statement of the facts involved here we quote from the opinion of the Court of Civil Appeals, as follows:

"On August 20, 1894, Jennie Anderson acquired a tract of 62½ acres of land by deed which was duly recorded. She was living on the land as a homestead to the time of her death. She died about 1910, leaving eight children. It was agreed that she was the common source of title in this case. The eight children of Jennie Anderson inherited from her the 62½ acres of land in suit. These eight children have continued to be the joint owners of this land. Two of the children, Frank and Taylor Anderson, and their wives and families, have continuously made this land their home, using and occupying the same, and were living on it and using it as their home up to the time of the trial of this suit, which was on July 20, 1931.

"On December 30, 1930, these eight children above mentioned, for a cash consideration then paid, executed and delivered to O. T. Welch a lease on the land for the production of oil and gas and other minerals. This lease was filed for record January 24, 1931. On January 17, 1931, O. T. Welch duly assigned the lease to O. H. Grissom, the appellant in this suit. On January 29, 1931, O. H. Grissom by conveyance containing covenants of warranty assigned and conveyed to Fred J. Adams a lease on the south one-half of the land. The wives of Frank and Taylor Anderson did not sign the lease to O. T. Welch. Each of them was informed that the lease had been made by their husbands and each of them would have signed the lease if it had been presented to them for their signatures. Thereafter, on February 25, 1931, Frank Anderson and his wife, Mattie Anderson, executed and duly acknowledged and delivered to Joe Bender a mineral deed conveying an undivided one-fourth of their one-eighth interest in the minerals under this land. In this conveyance appear the following recitals: 'Said land being now under an oil and gas lease, executed in favor of O. T. Welch, it is understood and agreed that this sale is made subject to the terms of said lease but covers and includes one-fourth of their one-eighth of all the oil royalty and gas rentals or royalty due to be paid under the terms of said lease. It is understood and agreed that one-fourth of their one-eighth of the money rentals which may be paid to extend the terms in which a well may be begun under the terms of said lease is to be paid to the grantee.'

"Taylor Anderson and his wife, Ada, on March 10, 1931,

executed a deed to Potts and Whatley, conveying a designated portion of the oil and gas in place under the 62½ acres of land. This conveyance contained a recital identical with that contained in the deed of Frank Anderson and wife to Joe Bender which has just been quoted. On April 9, 1931, Taylor and Frank Anderson and their wives, together with all the other joint owners of this land, executed, acknowledged, and delivered to W. D. Stone a mineral conveyance of an undivided 11/272 interest to the minerals in the land. In this conveyance all the grantors made the same reference and recital as above referred to. Again, on April 15, 1931, Taylor Anderson and his wife, Ada, and on April 16, 1931, Frank Anderson and his wife, Mattie, sold and conveyed specified parts of their mineral interest in this land. In each of these conveyances the same recitals appear as above stated.

"It appears that on March 11, 1931, Taylor and Frank Anderson, joined by their wives, executed an oil and gas lease to B. H. Thacker, J. H. Timmons, and C. P. Haynes for the purpose of production of oil and gas. No consideration, as appears, was paid for this lease. At the same date, though, Frank and Taylor Anderson, joined by their wives, duly executed and acknowledged power of attorney to B. H. Thacker, J. H. Timmons, and C. P. Haynes, coupled with an interest of one-half of the property."

The authoritative decisions of this State have announced certain well established principles of law:

First. A conveyance by a husband, not joined by his wife, of the homestead property, is merely inoperative while the property continues to be a homestead, or until such time as the homestead may be abandoned, or the deed ratified in accordance with law. Marler v. Handy, 88 Texas, 421, 31 S. W., 636; Irion v. Mills, 41 Texas, 310; Brewer v. Wall, 23 Texas, 585; 76 Am. Dec., 76; Goff v. Jones, 70 Texas, 572, 8 S. W., 525, 8 Am. St. Rep., 619.

Second. The owner of land may sever his estate in oil and gas from his estate in the remainder of the realty either by granting away his estate in oil and gas, or by conveying his estate in the surface realty and reserving or excepting his estate in the oil and gas. Humphreys-Mexia Co. v. Gammon, 113 Texas, 247, 254 S. W., 296, 29 A. L. R., 607.

Third. When the estates are so severed, they are separate and distinct. Hager v. Stakes, 116 Texas, 453, 294 S. W., 835; Lemar v. Garner, 121 Texas, 502, 50 S. W. (2d) 769.

Fourth. After the mineral estate has been severed by grant, possession of the surface by the grantor is not possession of the minerals, and such possession is not, therefore, adverse to the owner of the minerals. Elliott v. Nelson, 113 Texas, 62, 251 S. W., 501; Green v. West Texas Co., 225 S. W., 548.

3 The Constitution (Section 50 of Article 16) and the statutes of this State (Article 1300, R. S.) provide that the owner, if a married man, shall not sell the homestead without the consent of the wife; that "such consent shall be evidenced by the wife joining in the conveyance and signing her name thereto, and by her separate acknowledgement thereof taken and certified to before the proper officer, and in the mode pointed out in Articles 6605 and 6608." The courts zealously guard the rights of the owner of a homestead, and require that a conveyance thereof, in order to make it operative, shall meet the full requirements of the law. However, there is no restraint placed upon the husband and wife to prevent them from freely and voluntarily conveying their homestead. When the conveyance is signed and executed by them in strict conformity with the law, it is binding.

Article 1299 R. S., which controls the conveyance of the wife's separate property, provides that, "no such conveyance shall take effect until the same shall have been acknowledged by her privily and apart from her husband before some officer authorized by law to take acknowledgements to deeds." In construing this Article, it has been held that a deed signed and acknowledged by the wife two years after its execution by the husband, is valid. Halbert v. Hendrix (Civ. App.), 26 S. W., 911 (writ refused); Nolan v. Moore, 96 Texas, 343, 72 S. W., 583, 97 Am. St. Rep., 911. In the case of Breitling et al. v. Chester, 88 Texas, 586, 32 S. W., 527, the Supreme Court of this State held that where a married woman's acknowledgement to a deed conveying her separate property was void for want of privy examination, her subsequent acknowledgment to the same deed, made after her husband's death, and after a second husband abandoned her, is equivalent to a re-execution of the deed.

It is undisputed that the eight joint owners of the 62½ acres of land executed a mineral lease to O. T. Welch. Two of these joint owners, Taylor and Frank Anderson, with their wives and families, occupied this land as their homesteads. The interest of Taylor and Frank Anderson in this tract of land was their separate property. This lease was not signed by the wives of Frank and Taylor Anderson, although they knew all

about it, and were willing to sign it if the parties thought it necessary to make it effective. It is manifest from this record that all parties to the Welch lease, including the two wives who did not join therein, believed that they were making a valid mineral lease on the land in controversy. It is unquestioned that the Welch lease is valid and binding on all parties signing same, except Taylor and Frank Anderson and their wives. Nor is it contended that the lease was made for the purpose of defrauding the two wives of any rights they have in the minerals in the land; or that all the instruments under consideration are not clear and unambiguous in their terms and meaning. Without the signatures of the wives of Taylor and Frank Anderson, the mineral lease to Welch was inoperative, so long as the land constituted their homestead.

— The Welch lease was dated December 30, 1930. Thereafter, on February 25, 1931, Frank Anderson and his wife executed, acknowledged, and delivered to Joe Bender a mineral deed conveying, "an undivided one-fourth of their undivided one-eighth interest in and to the oil, gas and other minerals in and under" the 62½ acres. This conveyance recited, "together with the right of ingress and egress at all times for the purpose of mining, drilling and exploring said land for oil, gas and other minerals, and removing same therefrom. Said land being now under an oil and gas lease executed in favor of O. T. Welch, it is understood and agreed that this sale is made subject to the terms of said lease, but covers and includes one-fourth of their one-eighth of all of the oil royalty and gas rentals or royalty due to be paid under the terms of said lease. It is understood and agreed that one-fourth of their one-eighth of the money rentals which may be paid to extend the term within which a well may be begun under the terms of said lease is to be paid to the said grantee."

On March 10, 1931, Taylor Anderson and his wife sold and convyed to L. H. Pott and W. H. Whatley a 1/32 interest in the oil, gas, and other minerals in the 62½ acres of land. By this instrument they also conveyed a 1/32 of all the oil royalty to be paid under the terms of the Welch lease. This conveyance was expressly made subject to the terms of the Welch lease, and was of the same terms as the conveyance from Frank Anderson and wife to Bender. The two deeds above described made by Taylor and Frank Anderson and their wives were signed and executed before the rights of any third persons, inconsistent with the Welch lease, had intervened.

By deed dated April 9, 1931, Taylor and Frank Anderson

and their wives, together with the other joint owners of the land, sold an undivided interest in the minerals and in the royalty arising under the Welch lease to W. D. Stone. This conveyance was made subject to the Welch lease, and was of the same terms as the other deeds above described. By deed dated April 15, 1931, Taylor Anderson and his wife made a like conveyance to W. D. Northcutt; and by deed dated April 16, 1931, Frank Anderson and his wife made a further conveyance to W. D. Northcutt.

Each of the foregoing conveyances was of a part of the minerals, and was made subject to the Welch lease, and each deed conveyed a part of the royalty created by the Welch lease. By these conveyances the husbands and wives sold not only parts of the minerals in their homesteads, but also sold and received payment for and conveyed property interests created under the Welch lease. In these deeds the existence of the Welch lease was recognized and admitted. Their deeds contained covenants of warranty, and were signed and executed in accordance with all the formalities of the statutes.

4 Under the law the Welch lease was inoperative as to Taylor and Frank Anderson and their wives, and the power to make it operative rested exclusively with them. They exercised that power freely and voluntarily. They did not repudiate the Welch lease. On the contrary, a recognition of the lease was made in deeds executed by them in strict conformity with law, and the benefits arising therefrom accepted. By their acts in executing the royalty deeds above described, they gave the lease life. Their acts constituted a ratification of the lease. The purposes of the statutes have been fully met. The rights of the parties acquired thereunder became valid and binding. After they have ratified the Welch lease in the manner described above, it is not the policy of the law to permit a repudiation thereof. For a discussion of the general principles of ratification applied by the courts of this State, see Humble Oil & Ref. Co. v. Davis (Civ. App.), 282 S. W., 930; Ascarete v. Pfaff (Civ. App.), 78 S. W., 794; Van Deventer v. Gulf Production Co. (Civ. App.), 41 S. W. (2d) 1029 (writ refused); Buvens et al. v. Brown, 118 Texas, 551, 18 S. W. (2d) 1057.

Both the judgments of the Court of Civil Appeals and the trial court are reversed, and the cause remanded to the District Court for further proceedings in accordance with this opinion.

Opinion delivered March 6, 1935.